Walter Wolfgang KARNSTEIN and Walter William Karnstein, a minor, Plaintiffs,

v.

PEWAUKEE SCHOOL BOARD, a body politic; and Tom Millard, Louise Hillen, Patricia Williams, Richard Muenster, Jan Neubert, individually and in their official capacity as members of the Pewaukee School Board; George A. Goens, individually and in his capacity as Superintendent of Schools of the Pewaukee Public School System; Samuel H. Pacifico, individually and in his capacity as principal of Pewaukee High School; Edward J. McCraw, Constance Berg, Michael Lecher, Roberta Behnke, Beth Young-Eagle, George McCombe, individually and in their capacity as agents of the Pewaukee School Board, and John Doe and Jane Doe, unknown agents of the Pewaukee School Board, Defendants.

No. 82-C-1328.

United States District Court, E.D. Wisconsin.

Feb. 28, 1983.

Hector de la Mora, Elm Grove, Wis., for plaintiffs.

J. Ric Gass, Kasdorf, Dall, Lewis & Swietlik, Milwaukee, Wis., for defendants.

DECISION and ORDER

TERENCE T. EVANS, District Judge.

This matter is before me on the defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Because matters outside of the pleadings have been submitted, the motion will be treated as one for summary judgment under Rule 56.

Walter W. Karnstein is a senior at Pewaukee High School in Pewaukee, Wiscon-

sin. Pewaukee High School, like many other schools, sponsors a chapter of the National Honor Society (NHS), a national high school honorary society. The society is maintained under the direction of the National Association of Secondary School Principals. Presently, over 22,000 American high schools have NHS chapters.

Under the rules of the NHS, each school chapter establishes a minimum cumulative grade point average for academic eligibility in the society. If a student is academically eligible for membership, his application is reviewed by the school's faculty selection committee. The committee reviews the student's "... scholarship, service, character and leadership..." and votes individually on each application. A majority vote of the committee wins election to the society.

In the spring of 1982, Karnstein was academically eligible for membership in the Pewaukee Chapter of the NHS. He submitted an application for membership to the school's faculty committee. Subsequently, Karnstein was advised that he had not been selected for membership in the NHS.

After getting the bad news, young Karnstein and his father W. Wolfgang Karnstein, apparently embarked on an effort to have the vote of the faculty committee changed. According to the complaint, requests were made to the principal of the high school and the superintendent of schools in the Pewaukee Public School System to have the application reconsidered. The requests were denied. A request was then made to the Pewaukee School Board and apparently the Board directed that the faculty committee reconsider young Karnstein's application for membership. The faculty committee met again and entertained a more complete application filed on behalf of young Karnstein. Despite the spruced up application, the committee again voted not to elect Karnstein into the society. Although the vote totals of the faculty committee are not ordinarily made known to applicants, either those accepted or rejected, the Karnsteins apparently learned that the first vote was 4 to 3 against, and the second was 5 to 2.

Frustrated in their attempts to get this matter favorably resolved, the Karnsteins commenced this lawsuit claiming a deprivation of constitutional rights under 42 U.S.C. § 1983. The defendants include the Pewaukee School Board, the five individual members of the Board, the Superintendent of Schools, the Principal and the six individual teachers who together with the principal comprise the faculty committee that rejected Karnstein for membership in the NHS.

Paragraph 34 of the complaint alleges that young Karnstein was not elected to membership in the society upon his resubmitted application for the following reasons:

"A) That the faculty council was, or individual members thereof were, coerced and pressured into their decision by a person or persons unknown to the plaintiffs by means of a correspondence to one or more of said faculty members and by other means not known at this time to the plaintiffs;

"B) the said faculty council did not want to present the appearance of having been mistaken in its initial decision not to elect Walter W. Karnstein to membership in the said honor society;

"C) the faculty council did not want to establish a precedent of a successful appeal of its decisions; and

"D) in retaliation for the exercise of rights of free speech associated with W. Wolfgang Karnstein's efforts to persuade the Pewaukee School Board that the faculty council had erred in its prior consideration of the candidacy of Walter W. Karnstein, all of which reasons are arbitrary and capricious and violative of the said Constitutions and rules of the National Honor Society and the Pewaukee High School chapter thereof."

To correct the perceived injustice, the Karnsteins demand that the defendants be enjoined from denying young Karnstein membership in the NHS unless a "new and impartial panel" is appointed to again review his application. In addition, the Karn-

steins' complaint asks for $90,000 in damages and an award of attorney's fees.

■ The plaintiffs' claim that the acts complained of amount to a violation of young Karnstein's rights to due process of law secured by the fourteenth amendment and are in violation of his free speech rights under the first amendment. I see nothing whatsoever in this case to support a free speech claim. Accordingly, that portion of the case is summarily dismissed. If the plaintiffs have any chance at all of prevailing here it will have to be on their due process claim. Unfortunately for them, however, the due process claim is only slightly more appealing than their free speech claim. It has enough appeal to tempt me to test drive it but not enough to make me want to buy.

■ I recognize that election to the NHS is quite a feather in the cap of a high school student. It is a formal acknowledgment that the student is not only bright (assuming, of course, that being "bright" means the same as getting good grades, an assumption I would not want to bet on) but is also perceived by others as being a person of high character, leadership potential and one who has rendered service to the school. Undoubtedly, it is a valuable medal to wear when applying for admission to some colleges and universities. While I accept this without hesitation, I have no trouble concluding that an applicant for membership in the NHS has no constitutionally protected liberty or property interest in election to the society. The procedures governing the selection process, therefore, need not afford to an applicant the requirements of due process of law.

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court noted that to have an interest in a benefit (election to membership in the NHS is, of course, a benefit) "... a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." Young Karnstein had no "entitlement" to election to the NHS. Selection is a mere "honor" no different, except in degree, from such things as being picked to star in the school play or being named to serve as captain of the basketball team.

■ Even were an entitlement to be found, it is difficult to accept the argument that the due process clause of the constitution would be offended by what has occurred here. As we know, the requirements of due process vary depending on the situation. *Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The "process" that may be due a person facing a criminal charge greatly exceeds the "process" that is due a person facing termination from a government sponsored rent assistance program. What due process merely requires is fair treatment under the circumstances. Here, the procedures followed were, in my judgment, fair. While the result, as far as the plaintiffs are concerned, was not favorable, adherence to due process never guarantees that it will be.

Most honors are alike in that some individual or committee must review what someone has accomplished and make a subjective judgment of whether that conduct is deserving of reward or recognition. Inherent in such a system is the possibility of error. If Paul Newman (The Verdict) "wins" the academy award instead of Dustin Hoffman (Tootsie), who is to say that he really is more deserving? Courts would indeed be entering into a prickly briarpatch were they to get involved in reviewing these kinds of subjective judgments. While the plaintiffs here may feel that they have been treated unfairly, they have not established that Walter William Karnstein's constitutional rights have been violated.

The motion to dismiss is granted. Case dismissed.